UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON WHITE,

        Plaintiff,                                      Hon. Jane M. Beckering

v.                                                    Case No. 1:22-cv-265

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that the Commissioner's decision be affirmed.

**STANDARD OF REVIEW**

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *Tucker v. Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir., June 10, 2019). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her

decision and whether there exists in the record substantial evidence supporting that decision. *Id.* at 224-25. Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir., June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir., Dec. 21, 2018). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir., June 22, 2016).

## BACKGROUND

Plaintiff was 42 years of age on his alleged disability onset date. (ECF No. 6-2, PageID.44, 55). He completed high school and worked previously as a janitor and a fast-food services manager. (*Id.*, PageID.55). Plaintiff applied for benefits on October 9, 2019, alleging that he had been disabled since January 1, 2018, due to bi-polar disorder, schizophrenia, frozen shoulder, hip pain, anxiety, social disorder,

pulmonary embolism, Hepatitis C, and kidney stones. (ECF No. 6-2 and 6-6, PageID.44, 367).

Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). Following an administrative hearing, ALJ Michael Condon, in an opinion dated December 18, 2020, determined that Plaintiff did not qualify for disability benefits. (ECF No. 6-2, PageID.44-109). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f). If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a non-exertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff bears the burden to demonstrate he is entitled to disability benefits and he satisfies his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment

existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 315 (6th Cir., Jan. 7, 2020).

The ALJ determined that Plaintiff suffers from: bi-polar II disorder, anxiety disorder/social anxiety disorder, social phobia, depressive disorder, dissociative disorder, post-traumatic stress disorder, history of polysubstance abuse, and degenerative disc and joint disease of the lumbar spine, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.   (PageID.46-49).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the ability to perform medium work subject to the following limitations: (1) he can frequently climb ramps and stairs; (2) he can frequently climb ladders, ropes, and scaffolds; (3) he can frequently balance, kneel, crouch, and crawl; (4) he can occasionally stoop; (5) he can understand, remember, and apply information to perform simple tasks; (6) he can focus on and complete simple tasks, make simple decisions, and adapt to routine changes in the workplace; (7) he can have no more than occasional contact with the general public, co-workers, or

supervisors; and (8) he cannot perform fast-paced work defined as work that involves a per-minute or per-hour production quota. (ECF No. 6-2, PageID.49).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that there exists in the national economy a significant number of specific jobs which Plaintiff can perform, his limitations notwithstanding. *O'Neal*, 799 Fed. Appx. at 316. In satisfying this burden, the ALJ may rely on a vocational expert's testimony. *Ibid*.

In this case, a vocational expert testified that there existed approximately 100,000 jobs in the national economy which an individual with Plaintiff's RFC could perform. (ECF No. 6-2, PageID.56). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

## I.   Residual Functional Capacity

A claimant's RFC represents the "most [a claimant] can still do despite [his] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on

a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). Plaintiff argues that he is entitled to relief because the ALJ's RFC assessment is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ failed to adequately account for his non-exertional impairments.[1] The medical record reveals the following.

Treatment notes dated November 5, 2018, indicate that Plaintiff's medications were only "partially effective." (ECF No. 6-7, PageID.610). On multiple occasions in early 2019, Plaintiff reported that he was regularly using methamphetamine. (*Id.*, PageID.619, 632). On May 14, 2019, Plaintiff reported that he had stopped using methamphetamine "due to probation issues." (*Id.*, PageID.634). Treatment notes dated July 10, 2019, indicate that Plaintiff was "struggling" with anxiety and his medications were "ineffective." (*Id.*, PageID.638-39).

Treatment notes dated September 11, 2019, indicate that Plaintiff's medications were "partially effective." (*Id.*, PageID.648). Plaintiff also reported that he was working part-time and had recently been promoted. (*Id.*, PageID.647). On October 9, 2019, Plaintiff reported that "overall" he was "feeling well." (*Id.*, PageID.508). An assessment of Plaintiff's mental status was unremarkable. (*Id.*, PageID.511). Treatment notes dated November 20, 2019, indicate that Plaintiff's medications were "effective" with no side effects. (ECF No. 6-8, PageID.671-72).

---

[1] Plaintiff has asserted no objection to the ALJ's RFC with respect to his exertional limitations.

Plaintiff reported that he "continues to follow through with probation requirements." (*Id.*, PageID.672). An assessment of Plaintiff's mental status was unremarkable. (*Id.*, PageID.673).

On March 10, 2020, Plaintiff reported that he had recently been released from jail after serving a four-month sentence. (*Id.*, PageID.677). Plaintiff reported that he continued taking his medications while in jail. (*Id.*, PageID.677). An assessment of Plaintiff's mental status was unremarkable. (*Id.*, PageID.678). On April 7, 2020, Plaintiff reported that he was "doing a lot better." (*Id.*, PageID.696). The examiner reported that Plaintiff was experiencing "improvements" and the results of a mental status examination were unremarkable. (*Id.*, PageID.696-97).

Treatment notes from June 2020 through October 2020 indicate that Plaintiff's medications were "effective," he was "seeing improvements," and the results of mental status examinations were consistently unremarkable. (*Id.*, PageID.724-26, 729, 731, 733, 735, 738-40, 744, 777, 779, 785-86).

The ALJ also considered statements offered by Plaintiff's roommate, Ryan Koyers, and, Kristen Garrett, the assistant manager of the Dollar Tree store where Plaintiff worked part time. Koyers reported the following. Plaintiff requires "reminders" to shower and brush his teeth. (ECF No. 455, PageID.455). Plaintiff is unable to prepare meals for himself and requires "physical assistance" to perform household chores. (*Id.*, PageID.456). Plaintiff "spends very little time outside of his residence" and is "unable to engage in outdoor activities." (*Id.*, PageID.455, 457). Plaintiff also experiences difficulty driving. (*Id.*, PageID.457).

Koyers' statements are contradicted by the medical record and Plaintiff's ability to successfully maintain part-time employment, as well as Plaintiff's testimony at the administrative hearing. For example, Plaintiff testified that he does not experience any difficulties driving. (ECF No. 6-2, PageID.71). Plaintiff reported that he was participating in counseling which was helping. (*Id.*, PageID.86). Plaintiff reported that he feels healthier and was "eating normal." (*Id.*, PageID.87). Plaintiff reported that he goes out with Kovers to "exercise in the park," engages in crafts, and keeps in touch with him family on Facebook. (*Id.*, PageID.87-88).

Garrett reported that Plaintiff worked as a cashier and stocker. (PageID.493). Garrett indicated that Plaintiff "slacks" off and often does not complete his stocking duties. (*Id.*, PageID.494). Garrett reported that Plaintiff is occasionally late for work. (*Id.*, PageID.494). It must be noted that Plaintiff's part-time job at Dollar Tree requires him to perform activities beyond the limitations articulated by the ALJ's RFC assessment. In sum, Garrett's vague statements do not call into question the ALJ's RFC assessment. In sum, the ALJ's conclusion to afford little weight to these statements is well supported.

As reflected in his RFC assessment, the ALJ recognized that Plaintiff experiences significant non-exertional limitations. The ALJ is tasked with determining a claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). While the ALJ may not "play doctor" and substitute his own opinion for that of a medical professional, the ALJ is not required to tailor his RFC assessment to any particular

-8-

opinion or item of medical evidence. *See, e.g., Poe v. Commissioner of Social Security*, 342 Fed. Appx. 149, 157 (6th Cir., Aug. 18, 2009). Instead, the ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004).

This is precisely what the ALJ in this matter did and the ALJ's RFC assessment is supported by substantial evidence. There is no doubt that Plaintiff experiences significant non-exertional limitations. The ALJ's RFC finding, however, accounts for such by restricting Plaintiff to a limited range of work. The ALJ's RFC assessment is supported by substantial evidence. Plaintiff's argument for relief is simply that the ALJ should have weighed and evaluated the evidence differently. This is not grounds for relief, however. Accordingly, this argument is rejected.

## II. Medical Source Opinion

On October 8, 2020, Physician's Assistant Jennifer Richardson provided a sworn statement to Plaintiff's counsel. (ECF No. 6-8, PageID.770-73). Richardson reported that Plaintiff was experiencing "an increase in some of the paranoid ideation and psychotic features." (*Id.*, PageID.770). Richardson also reported that Plaintiff's roommate "does most of [Plaintiff's] activities of daily living for him and even has taken a role at his work and works part time with him." [2] (*Id.*,

---

[2] The Court notes that this assertion was not confirmed by Plaintiff's work supervisor, Kristen Garrett. (ECF No. 6-6, PageID.493-95).

PageID.771). Richardson further speculated that Plaintiff will likely need to reside in an "adult foster care" setting in the near future. (*Id.*, PageID.771). Richardson also reported that Plaintiff experiences difficulty if required to "interact [for] long periods of time with other people or just has to work at tasks for a long period." (*Id.*, PageID.773). Richardson also completed a form regarding Plaintiff's mental functional capacity. (*Id.*, PageID.774-75). Richardson reported that Plaintiff was "seriously limited" or "unable to meet competitive standards" in ten of sixteen categories. (*Id.*, PageID.774-75). The ALJ found Richardson's opinions unpersuasive and, therefore, afforded them little weight. (ECF No. 6-2, PageID.53-55). Plaintiff argues that he is entitled to relief because the ALJ's assessment of Richardson's opinions is not supported by substantial evidence.

Because Plaintiff filed his application after March 27, 2017, the ALJ evaluated the medical opinions pursuant to 20 C.F.R. § 416.920c. This regulation provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. § 416.920c(a). Instead, the ALJ is required to articulate his determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id.* § 416.920c(b)(1).

These factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or contradict the opinion. *Id.* § 416.920c(1)-(5). The ALJ must explain his

-10-

consideration of the supportability and consistency factors, but absent circumstances not present here, is not required to explain how the remaining factors were considered. *Id.* § 416.920c(b)(2), (3). The regulations define "supportability" and "consistency" as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* § 416.920c(c)(1)-(2).

As the ALJ correctly noted, Richardson's opinions are contradicted by the medical record, including her own treatment notes. (ECF No. 6-2, 6-7, 6-8, PageID.54, 608-54, 671-703, 722-48, 777-89). The ALJ also observed that Richardson's opinions were inconsistent with Plaintiff's activities including his ability to successfully work part time and his ability to successfully comply with the requirements of his probation. (ECF No. 6-2, PageID.54). Furthermore, Richardson's opinions were not consistent with Plaintiff's hearing testimony as discussed above. The ALJ's assessment of Richardson's opinions is supported by substantial evidence. Accordingly, this argument is rejected.

Plaintiff also argues that the ALJ erred by finding persuasive the opinions offered by Matthew Rushlau, Ed.D. and George Starrett, Ed.D., professionals who conducted reviews of the administrative record. (ECF No. 6-2, 6-3, PageID.53, 168-74, 185-90). The opinions offered by these two professionals are largely consistent with the ALJ's RFC assessment which, as discussed above, is supported by substantial evidence. Plaintiff argues that these opinions are deficient because Rushlau and Starrett did not review Plaintiff's medical records from 2020. As discussed above, however, Plaintiff's medical records from 2020 further support the opinions in question. This argument is, therefore, rejected.

### III. The ALJ Properly Assessed Plaintiff's Subjective Allegations

At the administrative hearing, Plaintiff testified that his medications generally work quite well, but that the efficacy of his monthly injection therapy begins to wane approximately one week before his next injection is scheduled. (ECF No. 6-2, PageID.83-85). Plaintiff reported that he would not be able to work full-time because his paranoia "comes and goes" and "the customers become too much after a while." (*Id.*, PageID.96-99). The ALJ, however, discounted Plaintiff's subjective allegations. (*Id.*, PageID.50-52). Plaintiff argues that he is entitled to relief because the ALJ improperly discounted his subjective allegations.

While "pain alone, if the result of a medical impairment, may be severe enough to constitute disability," *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984), a claimant's "statements about [his] pain or other symptoms will not alone establish

that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009).

Instead, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard. First, it must be determined whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms. *See* Titles II and XVI: Evaluation of Symptoms in Disability Claims, Social Security Ruling 16-3p, 2016 WL 1119029 at *3-4 (S.S.A., Mar. 16, 2016). Next, the intensity and persistence of the claimant's symptoms are evaluated to determine the extent to which such limit his ability to perform work-related activities. *Id.* at *4-9.[3]

As is also well recognized, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004). But, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the

---

[3] Social Security Ruling 16-3p rescinded Social Security Ruling 96-7p. *Id.* at *1. But the adoption of this new Social Security Ruling did not alter the analysis for evaluating a claimant's subjective statements. Instead, as the Social Security Administration stated, it was simply "eliminating the use of the term 'credibility' [so as to] clarify that that subjective symptom evaluation is not an examination of an individual's character." *Ibid.* As courts recognize, aside from this linguistic clarification, "[t]he analysis under SSR 16-3p otherwise is identical to that performed under SSR 96-7p." *Young v. Berryhill*, 2018 WL 1914732 at *6 (W.D. Ky., Apr. 23, 2018).

administrative record." In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Ibid.* It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. *See, e.g., Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) ("[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable").

As discussed above, the medical record supports the ALJ's conclusion that Plaintiff's emotional impairments are not as severe or as limiting as Plaintiff asserts. As Plaintiff indicated, his part-time job requires him to have significant contact with the public and co-workers. The ALJ's RFC, however, is more restrictive, for example, limiting Plaintiff's contact with the public and co-workers and further limiting Plaintiff to simple tasks. Thus, as the ALJ observed, while Plaintiff may not be able to work full-time at his current job, such does not lead to the conclusion that Plaintiff cannot perform full-time work which is consistent with his RFC. Plaintiff's central argument is that the Court should re-weigh the evidence and reach a different conclusion. As already noted, this the Court cannot do. The ALJ articulated a clear rationale for his conclusions regarding Plaintiff's subjective allegations and the ALJ's conclusions are supported by substantial evidence. Accordingly, this argument is rejected.

### IV.   Vocational Expert Testimony

Finally, Plaintiff argues that he is entitled to relief because the hypothetical question posed to the vocational expert by the ALJ failed to include all the functional limitations from which he suffers. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such questions must accurately portray Plaintiff's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996). In response to a question assuming Plaintiff was limited to the extent reflected in the ALJ's RFC, the vocational expert testified that there existed a significant number of jobs which Plaintiff could still perform. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert. The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

### CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: October 31, 2022

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge